**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

GEORGE MCNEIL,

     *Plaintiff,*

v.

X1, INC.,

     *Defendant.*

Case No. 25-2686-EFM-ADM

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant X1, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. 8). Defendant seeks to enforce the Arbitration Agreement between the parties under the Federal Arbitration Act ("FAA"). Plaintiff George McNeil argues that he is no longer required to arbitrate his claim because he has already submitted it to arbitration twice and both times the American Arbitration Association ("AAA") declined to administer arbitration due to Defendant's noncompliance with its rules. For the following reasons, the Court denies Defendant's Motion.

## I.      Factual and Procedural Background

Plaintiff completed an online application for an X1 Visa® Card on February 10, 2022. Defendant accepted his application and subsequently issued him an X1 Visa® Card. By using the card within 30 days of it being issued, Plaintiff accepted and agreed to the terms in the X1 Visa® Cardholder Agreement.

The Cardholder Agreement contains an Arbitration Agreement, which states:

[I]f you and we are unable to resolve our differences informally, you agree by opening or maintaining an Account with us, that if any dispute between you and us arises regardless of when it occurs, it will be settled using the following procedures: YOU AND WE AGREE AND UNDERSTAND THAT (1) YOU AND WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY AND (2) THIS SECTION PRECLUDES YOU AND US FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION OR JOINING OR CONSOLIDATING THE CLAIMS OF OTHER PERSONS. . . . [T]he parties agree to arbitrate any dispute or controversy concerning your Account or related products or services.

In describing binding arbitration, the Agreement states:

Either you or we can request binding arbitration. Each arbitration, including the selection of the arbitrator, shall be administered by the American Arbitration Association (AAA), according to the Consumer Arbitration Rules of the AAA. A single arbitrator shall be appointed. . . . If the AAA is unable to serve as administrator and you and we cannot agree on a replacement, a court with jurisdiction will select the administrator or arbitrator.

Plaintiff's conflict with X1 began around June 2024 after he discovered a balance of $9,695.00 owed to X1 on his Equifax credit report. Plaintiff contends that he has no such balance with X1 as this debt was discharged in July 2023 via a Chapter 7 bankruptcy. Plaintiff disputed the information with Equifax online and over the phone sometime before June 19, 2024. Equifax responded to Plaintiff on June 19 and refused to remove the balance.

In September 2024, Plaintiff filed a complaint alleging that he was harmed as a direct and proximate result of Defendant's failure to conduct a reasonable investigation as required by the Fair Credit Reporting Act.[1] Upon a demand to arbitrate from Defendant, Plaintiff voluntarily dismissed the suit against Defendant without prejudice. On May 8, 2025, he filed a complaint against "Coastal Community Bank d/b/a X1, Inc." with the AAA. On May 20, 2025, the AAA

---

[1] *McNeil v. Equifax Info. Servs., LLC*, No. 24-cv-02441-JWB-BGS.

declined to administer the arbitration and closed the case due to Defendant's failure "to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol and the Consumer Arbitration Rules."

Defendant's counsel advised Plaintiff that this issue only arose because it had named the defendant as "Coastal Community Bank d/b/a X1, Inc." instead of just "X1, Inc." Plaintiff filed again on June 27, 2025, using the recommended name. On July 3, the AAA again declined to administer and closed the arbitration, citing Defendant's failure to comply with the AAA's policies regarding consumer claims.

In both the May 20 and July 3 declination letters, the AAA stated:

> Prior to the filing of this arbitration, [] X1, Inc. failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, and/or removed themselves from the Consumer Clause Registry. . . Accordingly, we must decline to administer this claim and any other claims between this business and its consumers at this time.

The letters go on to state: "According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." The letters also clarify that, while the AAA may consider accepting newly filed consumer cases if X1 complies with the Consumer Rules, claimants in previously declined cases "may proceed in the appropriate court per R-1(d) of the Consumer Rules. However, the AAA will administer the previously declined matter if, at the Claimant's sole discretion, the Claimant chooses to re-file their claim with the AAA."

Plaintiff filed this lawsuit in November 2025 once again asserting that Defendant violated the FCRA by negligently and recklessly disseminating false information about Plaintiff's credit.

Defendant now moves to compel arbitration and stay the case. The motion is fully briefed and ripe for the Court's consideration.

## II.    Legal Standard

Arbitration is a matter of contract, and a party must arbitrate only those disputes that they have agreed to submit to arbitration.[2] If a contract contains an arbitration provision, there is a presumption of arbitrability.[3] Whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.[4] Whether there is an enforceable arbitration agreement is a matter of state contract law to be decided by the court.[5] A defendant seeking to compel arbitration has the initial burden to show enough evidence of an enforceable agreement to arbitrate.[6] If the defendant meets this burden, the plaintiff must show a genuine issue of material fact as to the validity of the agreement.[7] Doubts should be resolved in favor of arbitration.[8]

The FAA provides that arbitration agreements are valid and enforceable subject to the same legal grounds for the revocation of any contract.[9] A federal district court

---

[2] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted).

[3] *Id*. at 650 (citation omitted).

[4] *Id*. at 649 (citation omitted).

[5] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010).

[6] *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

[7] *Id*.

[8] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (citations omitted); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275 (10th Cir. 2010) (citation omitted).

[9] 9 U.S.C. § 2.

may compel arbitration when it would have jurisdiction in the underlying dispute.[10] Finally, a court must stay litigation on a matter that the parties have agreed to arbitrate until arbitration is had by the terms of the agreement.[11]

### III.    Analysis

Ordinarily, when considering a motion to compel arbitration, the primary issue before the Court is whether the parties agreed to arbitrate that particular dispute. Plaintiff, however, does not argue that his claim falls outside the scope of the Arbitration Agreement. Rather, he argues that arbitration cannot be compelled under the FAA because the AAA has already declined to arbitrate the dispute, twice. Defendant disagrees, arguing that the Court must stay the case and compel arbitration under §§ 3 and 4 of the FAA. In the alternative, Defendant argues that the Court should appoint a substitute arbitrator under the terms of the Arbitration Agreement and § 5 of the FAA. The Court addresses each of these arguments below.

### A.    Sections 3 and 4 of the FAA

"The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."[12] Section 3 provides that a court should stay an arbitrable case "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."[13] Section 4 provides

---

[10] § 4.

[11] § 3.

[12] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

[13] 9 U.S.C. § 3.

that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[14] Neither of these provisions provides a basis to compel arbitration here.

### 1.    *Section 4 of the FAA*

The Court first addresses the parties' arguments as to § 4. Plaintiff asserts that arbitration is not warranted under this section because Defendant is not a party "aggrieved" by Plaintiff's "failure, neglect, or refusal" to arbitrate. Plaintiff argues that it did not fail, neglect, or refuse to arbitrate because it submitted its claims to arbitration twice and both times the AAA declined to arbitrate due to Defendant's noncompliance with the AAA's policies.

The Tenth Circuit has not addressed the application of § 4 when a party seeking to compel arbitration did not comply with selected forum's arbitration rules. The Eleventh Circuit, however, recently addressed this issue in *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*.[15] In that case, the defendant moved to compel arbitration against the two plaintiffs based on the arbitration provision in the parties' contract.[16] Before filing suit, one of the plaintiffs had already submitted its claim to the AAA, but the AAA declined to arbitrate because the defendant had not submitted its consumer dispute resolution plan or paid the required fee.[17] The district court denied

---

[14] § 4.

[15] 137 F.4th 1268 (11th Cir. 2025).

[16] *Id*. at 1271.

[17] *Id*.

the defendant's motion to compel arbitration.[18] Defendant filed an interlocutory appeal, but the Eleventh Circuit affirmed the district court's decision.[19]

The Eleventh Circuit held that § 4 sets forth two requirements for relief: (1) "the party resisting arbitration must have failed, neglected, or refused to arbitrate;" and (2) "the party seeking to direct arbitration must have been aggrieved by that failure, neglect, or refusal."[20] According to the Eleventh Circuit, the defendant did not meet either of these conditions.[21] As to the plaintiff that already submitted its claim to the AAA, the court found that the defendant did not show that plaintiff "failed, neglected, or refused to arbitrate" because it did previously attempt to arbitrate its claim.[22] As to the second plaintiff—the one that did not request arbitration before filing suit—the court found that the defendant was not aggrieved by that plaintiff's failure, neglect, or refusal.[23] Rather, the defendant was aggrieved by the defendant's own actions because it was the defendant's conduct that led the AAA to refuse to arbitrate any of the defendant's claims.[24] Thus, the Eleventh Circuit found that the defendant was not entitled to an order compelling arbitration under § 4.[25]

In this case, as in *Merritt Island Woodwerx*, Plaintiff complied with the Arbitration Agreement by submitting its dispute to arbitration. After the AAA declined to resolve the dispute

---

[18] *Id*.

[19] *Id*. at 1276.

[20] *Id*. at 1275 (internal quotation marks and citation omitted).

[21] *Id*.

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*. at 1275-76.

the first time, Plaintiff returned to the AAA with Defendant's assurance that filing against a different named entity would solve the problem. The AAA declined to hear the case due to Defendant's noncompliance. Plaintiff has not failed, neglected, or refused to arbitrate his claim, and Defendant is not aggrieved by Plaintiff's failure but rather its own. Accordingly, the Court cannot compel arbitration under § 4 of the FAA.

Nonetheless, Defendant argues that the Court should require the parties to return to arbitration because it has been diligent in attempting to resolve any issues that prevented the initial attempts to arbitrate. Defendant states that it communicated with Plaintiff through the process of initiating arbitration and has resolved any issues with the AAA that prevented the earlier filings. This argument, however, is not persuasive. The final declination letter issued by the AAA states that pursuant to the AAA's Consumer Rule R-1(d) "either party may choose to submit its dispute to the appropriate court for resolution." Defendant agreed to be bound by the AAA's rules when it selected the AAA as its choice of forum in the Arbitration Agreement. It cannot now complain about the enforcement of those rules against it.[26] Defendant's subsequent remedial measures are irrelevant. Under Consumer Rule R-1(d), Plaintiff may bring his claim in federal court.

### 2. Section 3 of the FAA

To the extent Defendant seeks to enforce the Arbitration Agreement under § 3, its Motion fares no better. Section 3 allows a court to stay proceedings "until such arbitration has been had in accordance with the terms of the agreement." Plaintiff argues that the arbitration has already been "had" pursuant to the terms of the Arbitration Agreement, and thus, the Court cannot stay the case.

---

[26] *See Stavis v. One Techs., Inc.*, 2022 WL 3274533, at *3 (N.D. Tex. Jul. 13, 2022) (denying a motion to compel arbitration even though the defendant had corrected its noncompliance with the AAA because Consumer Rule R-1(d) allowed the plaintiff to seek relief in federal court and the defendant had agreed to be bound by the AAA's rules); *Greco v. Uber Techs., Inc.*, 2020 WL 5628966, at *3 (N.D. Cal. Sep. 3, 2020) (same).

The Tenth Circuit examined whether an arbitration was "had" under § 3 in a similar case—*Pre-Paid Legal Services, Inc. v. Cahill*.[27] In that case, the parties agreed that "[a]ll disputes and claims . . . shall be settled totally and finally by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association."[28] The plaintiff initiated arbitration, and the district court stayed the proceedings under § 3.[29] However, the defendant failed to pay its arbitration fees, and the AAA dismissed the proceedings without reaching a judgment on the merits.[30] The district court then lifted the stay and the defendant appealed.[31]

The Tenth Circuit affirmed the district court.[32] The Tenth Circuit noted that "[t]he phrase 'totally and finally' may suggest the arbitration 'ha[d][not] been had in accordance with the terms of the agreement' because there was no merits determination."[33] However, the Tenth Circuit reasoned that the parties' agreement was expressly governed by the AAA rules, and the arbitration was terminated in accordance with those rules.[34] Thus the Tenth Circuit found that the arbitration was "had" under § 3.[35]

Like the arbitration in *Pre-Paid Legal Services*, the arbitration here was "had" under § 3. The Arbitration Agreement states that arbitration "shall be administered by the American

---

[27] 786 F.3d 1287 (10th Cir. 2015).

[28] *Id.* at 1293.

[29] *Id*. at 1288.

[30] *Id*. at 1293.

[31] *Id*. at 1288.

[32] *Id*.

[33] *Id.* at 1293 (brackets in original).

[34] *Id.* at 1294.

[35] *Id*.

Arbitration Association, according to the Consumer Arbitration Rules of the AAA." Twice Plaintiff filed his claim with the AAA, and twice the AAA applied those rules, declined to administer the arbitration, closed the case, and granted leave to either party to file a claim in district court. Even though the AAA did not reach a final decision on the merits, Plaintiff still exercised his contractual obligation to arbitrate in accordance with the parties' Agreement. Thus, arbitration was "had," and the Court cannot compel arbitration under § 3.

**B.      Substitute Arbitrator**

Defendant also asserts that, even if the Court declines to compel arbitration, the Court must appoint a substitute arbitrator per the Arbitration Agreement's terms and § 5 of the FAA. The Arbitration Agreement states that "[i]f the AAA is unable to serve as administrator" and the parties cannot agree on a replacement, "a court with jurisdiction will select the administrator or arbitrator." Under this provision, before the Court can appoint a substitute arbitrator, Defendant must first show that the AAA is "unable" to serve as the administrator or arbitrator.

The Court looks to Washington law, to determine the meaning of "unable."[36] Under Washington law, words in a contract are given their "ordinary, usual, and popular meaning."[37] The

---

[36] The Cardholder Agreement contains a choice of law provision stating that Washington law governs the agreement. The Court applies Kansas choice of law rules, which generally enforce the law chosen by the parties to control a contract. *See Pepsi–Cola Bottling Co. v. PepsiCo, Inc.,* 431 F.3d 1241, 1255 (10th Cir. 2005) (applying the substantive law of the forum state, including its choice of law rules); *Brenner v. Oppenheimer & Co., Inc.,* 273 Kan. 525, 44 P.3d 364, 375 (2002) ("Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement."). Thus, the Court applies Washington law.

[37] *Condon v. Condon*, 298 P.3d 86, 92 (Wash. 2013) (citation omitted).

ordinary meaning of an undefined term is determined by dictionary definition.[38] Merriam-Webster defines "unable" as "incapable."[39]

Here, Defendant offers no evidence that the AAA is or was at any time incapable of administering the arbitration. To the contrary, Defendant notes that the AAA is now agreeable to administer the arbitration because Defendant has come into compliance with its rules. Indeed, once Defendant became compliant, the AAA indicated that it would again arbitrate future disputes with Defendant, but that "for a previously declined AAA matter, the Claimant may proceed in the appropriate court per R-1(d) of the Consumer Rules." The substitute arbitrator clause, therefore, has not been triggered, and the parties are still bound by the Consumer Rules of the AAA, which authorize Plaintiff to proceed in federal court.

The Court now turns to Defendant's argument that it must also appoint an arbitrator under § 5 of the FAA. That section states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator.[40]

Under the plain language of the statute, the Court must first determine whether the Arbitration Agreement contains a method for naming an arbitrator. Here, the arbitration clause plainly selects AAA as the arbitrator. Thus, under § 5, the Court will only appoint a substitute arbitrator if a party

---

[38] *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990).

[39] *Unable*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/unable (last visited July 30, 2026).

[40] 9 U.S.C. § 5.

(1) has failed to avail himself of arbitration through the AAA or (2) there has been a lapse in naming an arbitrator.[41]

Neither party has failed to avail themselves of arbitration before the AAA. As previously discussed, arbitration was "had" in accordance with the Agreement. Thus, the issue becomes whether there has been a lapse in the naming of an arbitrator.

Although the Tenth Circuit has not addressed the applicability of this provision, other courts have held § 5 permits a court to appoint a substitute arbitrator where the chosen arbitrator is unavailable.[42] In those instances, however, an alternative arbitrator may not be appointed if the choice of forum is an integral part of the agreement to arbitrate rather than an "ancillary logistical concern."[43]

Defendant argues that the AAA is not an integral part of the Arbitration Agreement and thus it is entitled to a substitute arbitrator. The Court, however, does not reach this argument because Defendant first fails to show that the AAA is unavailable, or in other words, that there has been a "lapse in naming an arbitrator." Defendant cites no authority requiring the appointment of an arbitrator under § 5 when the purported "lapse" was the movant's fault. Indeed, in both cases from this District cited by Defendant, the named arbitrator became unavailable because it no longer arbitrated consumer disputes, not because the movant failed to follow its rules.[44] Plaintiff, on the other hand, cites several cases holding that a defendant's noncompliance with the chosen forum's

---

[41] *Id.*

[42] *See, e.g., Klima v. Evangelical Lutheran Good Samaritan Soc.*, 2011 WL 5412216, at * 3 (D. Kan. Nov. 8, 2011) (citing cases from Fifth, Ninth, and Eleventh Circuits and adopting their approach as to § 5).

[43] *Id.* at *3.

[44] *Id.* at *2 (finding the National Arbitration Forum to be unavailable because it no longer arbitrated disputes); *Estate of Adair v. THI of Kan., LLC*, 2013 WL 653619, at *3 (D. Kan. Feb. 21, 2013) (same).

rules does not render the forum "unavailable."[45] The Court follows Plaintiff's cited decisions here. It cannot be said that the AAA was unavailable because the AAA would have heard Plaintiff's case but for Defendant's failure to maintain its status with it. Therefore, the Court declines to appoint an alternate arbitrator under § 5 of the FAA.

**IT IS THEREFORE ORDERED** that Defendant X1, Inc.'s Motion to Compel Arbitration (Doc. 8) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of August, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[45] *See, e.g., Forby v. One Techs., LP*, 616 F. Supp. 3d 588, 603 (N.D. Tex. 2022) (finding no lapse in the naming of an arbitrator because it was the defendant's failure to register the arbitration clause and pay the fee that caused the AAA to decline to administer the arbitration); *Merritt Island Woodwerx LLC*, 2023 WL 8699470, at *7 ("[The defendant] is also under the impression its noncompliance only made the AAA 'unavailable' as a forum, rather than constituted a default. . . . As [p]laintiffs note, this [c]ourt previously held that an arbitral forum is unavailable 'when it no longer exists or does not even handle private arbitrations,' not 'for merely refusing to arbitrate an agreement,' as the AAA did here."); *Stavis*, 2022 WL 3274533, at 3 n.1 (declining to appoint an alternate arbitrator because "forcing [the plaintiff] to continue to search for an alternative arbitration provider after AAA declined to administer the arbitration would nullify the effect of R-1(d)"); *Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125, at *5 (D.N.J. Mar. 22, 2021) (rejecting the defendant's argument that the arbitrator was unavailable because the defendant failed to maintain its status with the AAA, and thus declining to appoint a substitute arbitrator).